[Cite as *Bowker v. Bowker*, 2011-Ohio-4524.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


JENNIFER ERIN BOWKER

       Petitioner-Appellant

and

BETTY WOOD

       Intervening Grand-
       Mother-Appellant

-vs-


JASON BOWKER

       Petitioner-Appellee

| | |
|:--|:--|
| : | JUDGES: |
| : | W. Scott Gwin, P.J. |
| : | John W. Wise, J. |
| : | Julie A. Edwards, J. |
| : | |
| : | Case No. 10CAF110085 |
| : | |
| : | |
| : | O P I N I O N |


CHARACTER OF PROCEEDING:           Civil Appeal from Delaware County
                                         Court of Common Pleas, Domestic
                                         Relations Division, Case No.
                                         04-DSC-10-482

JUDGMENT:                                       Affirmed

DATE OF JUDGMENT ENTRY:          September 2, 2011

APPEARANCES:

For Petitioner-Appellants

RAYMOND L. EICHENBERGER
7620 Slate Ridge Blvd.
Reynoldsburg, Ohio 43068

For Petitioner-Appellee

JEFFREY A. BURKAM
43 East Central Avenue
Delaware, Ohio 43015

Guardian ad Litem
E. MARIANNE BAGEL
103 North Union Street, A
Delaware, Ohio 43015
*Edwards, J.*

**{¶1}** Appellants, Jennifer Erin Bowker and Betty Wood, appeal a judgment of the Delaware County Common Pleas Court awarding custody of J.B. and M.B. to appellee Jason John Bowker and denying appellant Betty Wood's petition for grandparent visitation.

## STATEMENT OF FACTS AND CASE

**{¶2}** The marriage of appellant Jennifer Bowker and appellee was dissolved on January 10, 2005. The parties have two children: J.B., born in 2002, and M.B., born in 2003. At the time of the dissolution, custody was awarded to Jennifer.

**{¶3}** On March 6, 2009, appellee filed a motion to modify the allocation of parental rights and responsibilities and to escrow child support. On June 11, 2009, appellant Betty Wood, the maternal grandmother of the children, filed a motion to intervene. Appellee filed a motion to modify temporary custody on July 21, 2009 which was granted by the court on September 11, 2009.

**{¶4}** At the time of the hearing on modification of custody, Jennifer was employed as a free lance writer contracting through Amelia Kirkner for AMSvance. Appellee was employed at Walmart as a grocery associate.

**{¶5}** At the time of the dissolution of the marriage in 2005, Jennifer was employed by Trinity Health at St. Ann's Hospital as a unit coordinator in ICU and multi-skilled technician. In 2006 or 2007, Jennifer hurt her shoulder moving a patient and was prescribed Percocet, Vicoden, and other painkillers. When her prescriptions ran out, she continued to use the drugs and was fired by her employer for stealing drugs on November 26, 2007.

**{¶6}** Jennifer and the children moved in with a friend after Jennifer's employment was terminated. She worked for the same friend for SEO, Search Engine Optimization. This employment terminated in October of 2008, and her friend moved to Georgia. Unable to afford the rent, Jennifer moved into her mother's residence.

**{¶7}** Jennifer was indicted for stealing drugs from St. Ann's in May of 2008. She missed her first hearing and was arrested and incarcerated for ten days. She was accepted into the treatment in lieu of conviction program.

**{¶8}** On Christmas Day, 2008, Jennifer and her mother got into an argument. Jennifer moved in with her boyfriend, Richard "Fess" Minck. Fess was living with two other men and did not have room for the children. On December 28, 2008, Jennifer moved the children into appellee's home. At the end of February, 2009, Jennifer and Fess obtained an apartment in the same complex where the children resided with appellee. The parties began a shared parenting arrangement. However, when appellee filed a motion for custody in March, 2009, Jennifer terminated the shared parenting arrangement and reverted to the custodial provisions of the original decree.

**{¶9}** The magistrate found a change in circumstances sufficient to justify a change in custody and recommended that appellee be named the custodial parent,

giving Jennifer visitation rights. The magistrate recommended that Betty Wood be given visitation on any weekend that would otherwise be Jason's weekend.

{¶10} Appellants filed objections to the magistrate's report. Appellants did not include a transcript of the proceedings, but instead submitted an affidavit of appellants' counsel of the evidence, arguing that a transcript of the proceedings was unavailable due to the "outrageous sum" of $2,800.00 quoted by the court reporter to prepare a transcript, which they claimed they could not afford. The trial court noted that a transcript was available which appellants had elected not to pay the cost of, and that the affidavit was not a statement of the evidence but a closing argument. Nonetheless, the court considered the objections on the merits and named appellee the residential parent of the children. The court sustained appellee's objection to grandparent visitation, finding that the magistrate erred in awarding Betty Wood visitation during weekends when appellee works because appellee works mostly at night, and it would benefit the children to keep them settled in one household or the other on weekends. The court concluded that Betty Wood could visit the children when they were with Jennifer.

{¶11} Appellants assign six errors on appeal:

{¶12} "I. THE MAGISTRATE AND TRIAL JUDGE ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF APPELLANT ERIN BOWKER AND APPELLANT BETTY WOOD IN FAILING TO ISSUE SEPARATE FINDINGS OF FACT AND CONCLUSIONS OF LAW WHEN REQUESTED TO DO SO BY THE APPELLANTS.

{¶13} "II. THE MAGISTRATE AND TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED THEIR DISCRETION IN FINDING THAT THERE WAS A CHANGE OF CIRCUMSTANCE IN THE LIVES OF APPELLANT ERIN BOWKER AND THE TWO

(2) MINOR CHILDREN SO AS TO MERIT A MODIFICATION OF PARENTAL RIGHTS AND RESPONSIBILITIES.

{¶14} "III. THE TRIAL COURT AND MAGISTRATE ERRED AS A MATTER OF LAW AND ABUSED THEIR DISCRETION IN THE TEMPORARY CHANGE OF PARENTAL RIGHTS AND RESPONSIBILITIES WHICH OCCURRED ON SEPTEMBER 11, 2009.

{¶15} "IV. THE TRIAL COURT AND MAGISTRATE ERRED AS A MATTER OF LAW AND ABUSED THEIR DISCRETION BY FORCING APPELLANT ERIN BOWKER TO TESTIFY AT THE VARIOUS HEARINGS IN THE CASE ABOUT HER MEDICAL CONDITIONS AND BY REFUSING TO HONOR APPELLANT ERIN BOWKER'S MEDICAL PRIVILEGE IN THE MATTER.

{¶16} "V. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HIS DISCRETION IN REDUCING THE GRANDPARENT VISITATION OF INTERVENING PARTY BETTY WOOD WHICH HAD BEEN SET BY THE MAGISTRATE.

{¶17} "VI. THE MAGISTRATE AND TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED THEIR DISCRETION IN ORDERING THE APPOINTMENT OF A GUARDIAN AD LITEM IN THE CASE OVER THE OBJECTION OF APPELLANT ERIN BOWKER, AND THEN FORCING APPELLANT ERIN BOWKER TO PAY FOR HALF OF THE FEES OF THE GUARDIAN AD LITEM, EVEN THOUGH SHE STATED IN HER ORIGINAL MOTION THAT SHE COULD NOT AND CAN NOT AFFORD THE SAME."

I

**{¶18}** In their first assignment of error, appellants argue the trial court erred in failing to issue separate findings of fact and conclusions of law upon request.

**{¶19}** The magistrate's 11-page decision was filed on February 12, 2010. On February 22, 2010, Jennifer filed a request for findings of fact and conclusions of law. The magistrate ruled that the decision filed on February 12 shall constitute Findings of Fact and Conclusions of Law. Judgment Entry, February 25, 2010. Appellant filed an objection to the magistrate's decision. The trial court found that a reading of the magistrate's decision of February 12, 2010, shows that the magistrate made thorough findings of fact and conclusions of law and overruled the objection.

**{¶20}** Civ. R. 53(D)(3)(a)(ii) provides:

**{¶21}** "Subject to the terms of the relevant reference, a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law. A request for findings of fact and conclusions of law shall be made before the entry of a magistrate's decision or within seven days after the filing of a magistrate's decision. If a request for findings of fact and conclusions of law is timely made, the magistrate may require any or all of the parties to submit proposed findings of fact and conclusions of law."

**{¶22}** This Court has previously held that where a magistrate in effect made findings of fact and conclusions of law in the magistrate's decision and stated in response to a timely request for findings that all pertinent findings were included in that decision, the court does not err in denying a request for further findings. *Fogress v. McKee* (August 11, 1999) Licking App. No. 99CA15, unreported.

**{¶23}** The decision of the magistrate included extensive findings explaining his reasoning for recommending the change in custody. The magistrate's decision was sufficient to constitute findings of fact and conclusions of law in the instant case.

**{¶24}** The first assignment of error is overruled.

II

**{¶25}** In their second assignment of error, appellants argue the court erred in finding a change in circumstances sufficient to justify a change in custody.

**{¶26}** We first must address the state of the record regarding the lack of a transcript of the proceedings in this case.

**{¶27}** Civ. R. 53(D)(3)(b)(iii) provides

**{¶28}** *"(iii) Objection to magistrate's factual finding; transcript or affidavit. An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ. R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections."*

**{¶29}** Where an appellant fails to provide a transcript of the original hearing before the magistrate for the trial court's review, the magistrate's findings of fact are considered established and may not be attacked on appeal. *Stark v. Haser*, Delaware

App. No. 03CAF11057, 2004-Ohio-4641, ¶15. However, appellant argues that a transcript of the proceedings was not available because she was indigent, and instead produced an affidavit of the evidence. The trial court made a specific finding that a transcript was available and further found that the affidavit of the evidence filed by appellant was in the nature of closing argument rather than a statement of the evidence. While appellants claimed at that time they could not afford a transcript, no affidavit of indigency was filed prior to the court's decision.

{¶30} On appeal, appellants sought to proceed by way of an App. R. 9(C) statement of the evidence rather than filing a transcript, again claiming a transcript is unavailable due to the indigency. This Court initially denied appellants' motion for an order submitting their affidavit of the evidence to the trial court for settlement and approval, finding that appellants had not averred that a transcript was unavailable. Judgment Entry, January 31, 2011. Appellants filed a motion to reconsider, and filed an affidavit of Jennifer Bowker stating that she is indigent and cannot afford to pay for a transcript. This Court noted that appellants did not properly initiate App. R. 9(C) procedure, but nevertheless we remanded the case to the trial court for the purpose of approving or settling appellants' proposed 9(C) statement. The trial court did so on March 15, 2011, striking the majority of appellants' statement as either conclusory or argumentative and not in the nature of statements of fact. Appellants then filed a motion to "abrogate the trial judge's entry of March 15 and remand to the trial court magistrate." This Court overruled that motion on April 1, 2011.

{¶31} The Ohio Supreme Court has held that a transcript is "unavailable" for the purposes of App. R. 9(C) to an indigent appellant unable to bear the cost of providing a

transcript. *State ex rel. Motley v. Capers* (1986), 23 Ohio St.3d 56, 491 N.E.2d 311. The Tenth District has similarly concluded that if a transcript is unavailable due to indigency for purposes of App. R. 9(C), it is similarly unavailable to an indigent person pursuant to Civ. R. 53 and an affidavit of the evidence may be used in lieu of a transcript. *Gill v. Grafton Correctional Institution*, Franklin App. No. 09AP-1019, 2010-Ohio-2977.

{¶32} In the instant case, appellant Jennifer Bowker did not file an affidavit of indigency until a final judgment had been issued by the trial court and the case was pending on appeal. Therefore she did not demonstrate that the transcript was unavailable for the proceeding on objections to the magistrate's report. In any event, the statement of evidence provided pursuant to App. R. 9(C) was, as noted by the trial court, not in the nature of a statement of the evidence but rather in the nature of a closing argument, as it was made up almost entirely of conclusory and argumentative statements rather than a statement of what evidence was presented by the parties in the trial court. When the court struck the majority of this document, instead of seeking to prepare and settle a new statement of the evidence which complied with App.R. 9, appellants moved this Court to order the statement to be submitted to the magistrate instead, which was denied by this Court. Given that there was not a valid statement of the evidence or a transcript before the trial court on ruling on appellant's objections, nor do we have anything by way of evidence left in the App. R. 9(C) statement by which to challenge the findings of the magistrate concerning change in circumstances, we must find the magistrate's findings of fact to be established. See *Stark v. Haser*, supra.

{¶33} R.C. 3109.04(E)(1)(a) provides for a change in the residential parent:

{¶34} "(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶35} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

{¶36} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

{¶37} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶38} The Ohio Supreme Court has further explained the standard for change of residential parent status:

{¶39} "Modification of a prior decree, pursuant to R.C. 3109.04(E)(1)(a), may only be made 'based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject

to shared parenting decree, and that the modification is necessary to serve the best interest of the child.' This is a high standard, as a 'change' must have occurred in the life of the child or the parent before the court will consider whether the current designation of residential parent and legal custodian should be altered." *Fisher v. Hasenjager*, 116 Ohio St. 3d 59-60, 876 N.E.2d 546, 2007-Ohio-5589.

**{¶40}** The magistrate made the following findings regarding change in circumstances:

**{¶41}** "A. change has occurred in the circumstances of the children and Jennifer. Instead of the children being age 1 and 2, they are now 6 and 7. They attend first and second grade. Jason has an IEP and is struggling with reading and writing. Jason was almost a year behind in first grade. Jennifer has worked for St. Ann's, Amelia Kirkner – SEO Seach Engine Optimization, Select Specialty Hospital, and now again with Amelia Kirkner at AMSvance having been terminated with her employment at St. Ann's and Select Specialty Hospital. Jennifer has lived at Sessis Drive with Amelia, at 8454 Norahrow with her mother, at 16 Crestview, Clintonville with Fess, at 80 Broad Meadows with Fess, and since October of 2009 at 2234 Belcher (also with Fess). The children have attended Colonial Hills Elementary, Worthington Estates Elementary, Indian Springs Elementary, and currently due to the temporary court order Woodward Elementary in the Delaware, Ohio school district. In November of 2007, Jennifer was addicted to pain killers. She was caught and her employment was terminated. Jennifer was charged with theft of drugs and received treatment in lieu of conviction. Jennifer admitted to the guardian ad litem that she used cocaine. Jennifer has not had 12 straight months where she gave clean urine. In January of 2009, Jennifer gave no

sample. In February and March of 2009, Jennifer tested negative, but the tests were 'dilutes.' Jennifer gave no sample in April of 2009. During this time Jennifer posted pictures on MySpace that showed a terrible open infection of her arm as if her arm was being eaten by flesh-eating bacteria. Jennifer stated that her surgery in June of 2009 was to remove a completely encrusted cancerous tumor. Yet, Jennifer has not been prescribed any follow-up chemo therapy. Jennifer has also been diagnosed as being bi-polar. These facts have arisen since the prior decree." Magistrate's Decision, February 12, 2010, page 8.

**{¶42}** The findings of fact of the magistrate show a change in the circumstances of both the children and the residential parent. While appellant now wants to argue that the findings concerning Jennifer's drug use are not supported by the evidence, none of the statements remaining in appellant's App. R. 9(C) statement support appellant's argument and appellant failed to file a transcript or proper affidavit of evidence on objections to the magistrate's report in the trial court. Accordingly, the second assignment of error is overruled.

III

**{¶43}** Appellant argues the court erred in awarding appellee temporary custody of the children on September 11, 2009.

**{¶44}** This Court has previously held that temporary orders are merged into the final decree and cannot be claimed as error. *Ruby v. Ruby* (August 11, 1999), Coshocton App. No. 99-CA-4, unreported. Further, we have no transcript of the proceedings nor is there anything in the statement of evidence to support appellant's claim that the court abused its discretion in the order of temporary custody to appellee.

The findings of fact demonstrate that prior to the award of temporary custody, appellant Jennifer Bowker had voluntarily placed the children in appellee's home when she moved in with her boyfriend and there was no room for the children in her residence.

{¶45} The third assignment of error is overruled.

IV

{¶46} In their fourth assignment of error, appellants argue that the court erred in forcing Jennifer Bowker to testify at various hearings in the case about her medical conditions and refusing to honor her medical privilege.

{¶47} The trial court found that the magistrate did not order Jennifer to testify concerning her medical history, she agreed to testify concerning her medical information, after her objection on the basis of privilege was overruled, in order to allow the trial to proceed. A finding of no medical privilege is immediately appealable, and had Jennifer appealed this ruling, the trial would not have proceeded until the appeal process was complete. See *Brown v. Yothers* (1988), 56 Ohio App.3d 29. Nothing in the statement of evidence as settled by the trial court supports appellant's claim that she was forced to testify concerning her medical condition, and we do not have a transcript of the proceedings.

{¶48} The fourth assignment of error is overruled.

V

{¶49} In the fifth assignment of error, appellant Betty Wood argues the court erred in reducing her grandparent visitation. Betty Wood has not filed an affidavit of indigency in this case. Therefore, the transcript of the proceedings is not unavailable as to Betty Wood, and a transcript has not been provided. When portions of the transcript

necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384.

{¶50} The fifth assignment of error is overruled.

VI

{¶51} In the sixth assignment of error, appellant argues the court erred in appointing a guardian ad litem and in requiring appellant Jennifer Bowker to pay half of the fees of the guardian.

{¶52} Appellant argues at page 36 of her brief filed March 21, 2011, "Due to the drastic space page restrictions imposed upon the Appellants by rulings of the Court in this case, Appellants will argue this Assignment of Error in their reply brief." On March 3, 2011, this Court denied appellants' request to exceed the page limit for a brief and granted leave to file a brief which complies with the Local and Appellate Rules on or before March 25, 2011. Appellants had previously filed a brief which did not comply with the page limitations set by rule.

{¶53} App. R. 16(A)(7) provides that assignments of error shall be argued in the brief of appellant. App. R. 16(C) states that a reply brief is to "reply to the brief of the appellee." New assignments of error cannot be raised in a reply brief. *State v. Nichols,* Coshocton App. No. 01-CA-016, 2002-Ohio-4048, citing *Sheppard v. Mack* (1980), 68 Ohio App.2d 95, 427 N.E.2d 522.

{¶54} In the instant case, the sixth assignment of error is not argued in appellants' brief and is therefore not properly before this court. Further, R.C. 3109.04(B)(2)(a) provides:

{¶55} "(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:

{¶56} "(a) The court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child."

{¶57} Appellee moved the court for appointment of a guardian ad litem, and the court interviewed the children as reflected by the magistrate's decision at page nine. Therefore, appointment of the guardian was statutorily required. Further, although appellant did not file an affidavit of indigency in the trial court, the court ordered her one-half of the guardian's fees to be paid from the indigent fund established for such fees and for Jennifer to reimburse the fund at the rate of $100 per month. Appellant was not ordered to pay child support in this case, and has not demonstrated that the court abused its discretion in ordering her to reimburse the guardian's fund to cover her share of the fees.

{¶58} The sixth assignment of error is overruled.

{¶59} The judgment of the Delaware County Common Pleas Court is affirmed.


By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

                                            JUDGES

JAE/r0629

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

JENNIFER ERIN BOWKER                :
                                                          :
                      Petitioner-Appellant      :
                                                          :
and                                                      :
                                                          :
BETTY WOOD                                     :
                                                          :
                      Intervening Grand-       :
                      Mother-appellant          :
                                                          :
                                                          :
-vs-                                                    :          JUDGMENT ENTRY
                                                          :
JASON BOWKER                                 :
                                                          :
                      Petitioner-Appellee       :          CASE NO. 10CAF110085

    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES